1  NOSSAMAN LLP
Paul S. Weiland (SBN 237058)
2  Benjamin Z. Rubin (SBN 249630)
Christopher D. Hughes (SBN 254864)
3  621 Capitol Mall, Suite 2500
Sacramento, CA 95814
4  Telephone: (916) 442-8888
Facsimile: (916) 442-0382
5  pweiland@nossaman.com
brubin@nossaman.com
6  chughes@nossaman.com
7

8  KELLEY DRYE & WARREN LLP
David E. Frulla (*pro hac vice* forthcoming)
9  Bret A. Sparks (*pro hac vice* forthcoming)
Bezalel A. Stern (*pro hac vice* forthcoming)
10 Elizabeth C. Johnson (*pro hac vice* forthcoming)
3050 K Street NW, Suite 400
11 Washington, DC 20007
Telephone:  (202) 342-8400
12 Facsimile:  (202) 342-8451
dfrulla@kelleydrye.com
13 bsparks@kelleydrye.com
bstern@kelleydrye.com
14 ejohnson@kelleydrye.com
15

16 *Counsel for Plaintiffs*

17 **UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA**
18

19 APRIL IN PARIS, a California Sole
Proprietorship,  AMTAN LOUISIANA, a
20 Wyoming Limited Liability Company,
BROOKS FAMILY ALLIGATOR FARM II, a
21 Florida Limited Liability Company,
HOGWARDS CARRY GOODS d/b/a
22 CHESTER MOX, a California Sole
Proprietorship,  BIJAN BOUTIQUES, LLC
23 d/b/a HOUSE OF BIJAN, a Delaware Limited
Liability Company,  LA DUCHESSE, LTD, a
24 California Corporation,  LARSON LEATHER
COMPANY, a Texas Limited Partnership,
25 LOUISIANA ALLIGATOR FARMERS &
RANCHERS ASSOCIATION, a Louisiana
26 Nonprofit Corporation, MAGNA LEATHER
CORPORATION, a Texas Corporation, M&D
27 GATOR PRODUCTS, INC., a Florida S-

28

CIVIL ACTION NO. 19-cv-02471-MCE-DB

**FIRST AMENDED COMPLAINT TO DECLARE INVALIDITY AND ENJOIN ENFORCEMENT OF CALIFORNIA PENAL CODE § 653o(b) FOR VIOLATION OF THE SUPREMACY CLAUSE, THE COMMERCE CLAUSE, AND THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION**

1
AMENDED COMPLAINT

4817-5781-8286v.1

1  Corporation, and SELMINT PTY LTD., a South
2  African Proprietary Limited Company

3                           Plaintiffs,

4            v.

5  XAVIER BECERRA, in his official capacity as
   Attorney General of California, and
6  CHARLTON BONHAM, in his official capacity
   as Director of the California Department of Fish
7  and Wildlife

8                           Defendants.

9

10         Plaintiffs April in Paris; AMTAN Louisiana; Brooks Family Alligator Farm II; Hogwards

11 Carry Goods d/b/a Chester Mox; Bijan Boutiques, LLC d/b/a House of Bijan; La Duchesse, Ltd.;

12 Larson Leather Company; Louisiana Alligator Farmers & Ranchers Association; Magna Leather

13 Corporation; M&D Gator Products, Inc., and SELMINT Pty Ltd. (collectively, "Plaintiffs"), by

14 and through undersigned counsel, bring this Complaint against Defendants the Honorable Xavier

15 Becerra, in his official capacity as Attorney General of California, and Charlton Bonham, in his

16 official capacity as Director of the California Department of Fish and Wildlife (collectively,

17 "Defendants"), for violations of the Supremacy Clause, Commerce Clause, and Due Process

18 Clause of the United States Constitution relating to California Penal Code § 653o(b) ("Section

19 653o(b)").  In support of their Complaint, Plaintiffs allege as follows:

20                          **JURISDICTION AND VENUE**

21         1.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C.

22 §§ 1331 and 2201-02.

23         2.     Venue is properly situated in this District pursuant to 28 U.S.C. § 1391 because

24 Defendants are residents of the State of California, are subject to personal jurisdiction in this

25 District with respect to this action, and because a substantial part of the property that is the subject

26 of the action is situated in this district.

27                          **NATURE OF THE ACTION**

28         3.     As of January 1, 2020, California law will state that it will be "unlawful to import

---

2

AMENDED COMPLAINT

1   into [the State of California] for commercial purposes, to possess with intent to sell, or to sell

2   within the state, the dead body, or any part or product thereof, of a crocodile or alligator."  Cal.

3   Penal Code § 653o(b).

4        4.    Plaintiffs in this action—who reside both in and outside of the State of California—

5   represent every step in the chain of commerce for alligators and crocodiles.

6        5.    Plaintiffs only utilize three species of alligator and crocodile (excluding legally-

7   traded and federally-regulated caiman species, which are presumably omitted from enforcement

8   under Section 653o(b), although this presumption remains unclear and will be discussed in more

9   detail below).  Those three species, American alligator (*Alligator mississippiensis*), Nile crocodile

10  (*Crocodylus niloticus*), and saltwater crocodile (*Crocodylus porosus*) originating in Australia, are

11  all legally and exclusively permitted for commercial trade in the United States under the

12  Endangered Species Act, 16 U.S.C. § 1531, *et. seq.* (the "ESA") and its implementing regulations

13  by the U.S. Fish and Wildlife Service ("FWS") due to their classification as Appendix II species

14  under the Convention on International Trade in Endangered Species of Wild Fauna and Flora

15  ("CITES").  CITES entered into force in 1975 and became the only global treaty that ensures that

16  international wildlife trade is based on sustainable use and management of wild and captive

17  populations.  CITES provides a framework for cooperation and collaboration among nations to

18  prevent further decline in wild populations of animals and plants.  More than 180 countries,

19  including the United States, implement CITES.  According to CITES, "Appendix II includes

20  species not necessarily threatened with extinction, but in which trade must be controlled in order

21  to avoid utilization incompatible with their survival."

22       6.    The backbone of CITES is the permit system which facilitates international

23  cooperation in conservation and trade monitoring.  Permits are issued only if a country's

24  Management and Scientific Authorities determine that trade is legal and does not threaten the

25  species' survival in the wild.  Per the ESA and CITES requirements, as implemented by the FWS

26  regulations, Plaintiffs are subjected to a litany of requirements to participate in the trade of

27  alligators and/or crocodiles and their products, including: maintaining import/export licenses

28  which must be updated annually; applying for international trade permits for every shipment of

3

AMENDED COMPLAINT

alligator or crocodile skins, whether shipped or received, that verifies, among other things, the country of origin and number of skins per shipment; maintaining highly-detailed and organized records for every skin and transaction (for a minimum of ten years); undergoing random and scheduled, visual and forensic, inspections by state, federal, and foreign wildlife agencies; and ensuring that each separate skin or leather possesses a CITES tag, placed through the tail, which conveys via individual serial numbers the year of harvest, country of issuance, and species of alligator or crocodile.  Crocodiles and alligators (as well as caiman) are the only species which have an international requirement for serialized numerical non-reusable tags, thus making theirs the most highly regulated wildlife trade in the world.  Indeed, the industry has been praised internationally as a model for sustainable trade programs.

7.     Plaintiffs farm and raise the animals from eggs, purchase and process wild animals for the skin and meat, tan and craft the skins into leather, manufacture the skins into a wide range of exotic leather goods, sell these products to retail and wholesale establishments, and engage in the retail transactions directly by selling these products to a wide range of consumers from around the world—many of whom reside in California or travel to California for the specific purpose of purchasing these quality, often one-of-a-kind items.  In doing so, Plaintiffs represent thousands of workers and millions of dollars of interstate and international commerce.

8.     If Section 653o(b) is allowed to take effect on January 1, Plaintiffs will face a wide range of irreparable harms.  Indeed, some irreparable harms are already taking effect in anticipation of the impending trade ban, including canceled orders, lost business transactions and sales, and halted or dramatically curtailed production.  Other imminent irreparable harms include liquidated inventories, "fire sales" of products, job eliminations, cancellations of entire business lines, dissolutions of businesses, and potential relocation of several California Plaintiffs outside the state.  Moreover, the fundamental disruption of trade in alligator and crocodile products in California—one of the central hubs worldwide of retail trade in exotic leather products made from these species—also compromises conservation of these important species, their habitats, and the rural, often impoverished, local communities that depend on this industry, some of the very things many proponents of this ill-considered ban purport to support.

4817-5781-8286v.1

9.      Section 653o(b) should not be allowed to take effect.  Section 653o(b) violates the United States Constitution.  This Court should enjoin it.  In fact, this Court has already enjoined 653o as it pertains to alligators.  *Fouke Co. v. Brown*, 463 F. Supp. 1142 (E.D. Cal. 1979).

10.      The law violates at least three sections of the United States Constitution: (1) The Supremacy Clause, (2) The Commerce Clause, and (3) the Due Process Clause.

11.      In enacting and enforcing Section 653o(b), Defendants and the State of California have ignored the fact that the ESA, along with its implementing regulations and those licenses and permits issued thereunder, expressly permits the importation, possession for sale, and sale of these alligators and crocodiles—as well as parts and products made from them.  Any enforcement of Section 653o(b) would contradict the federal statute, and is preempted by the Supremacy Clause of the U.S. Constitution.

12.      As Plaintiffs' businesses demonstrate, alligators, crocodiles, and their products are legally traded nationally (as well as internationally).  Trade of their products is a multi-million dollar business, employing thousands of workers.  California's law attempts to halt this national trade at the state's borders.  Such an attempt is an unconstitutional violation of the Dormant Commerce Clause of the U.S. Constitution.  The unconstitutional nature of Section 653o(b) is underscored when a comparison is made between the real economic damage Section 653o(b) will cause to Plaintiffs (and others similarly situated in this industry) and the illusory benefits of that ban for the State of California and its citizens.

13.      Finally, Section 653o(b), a criminal law, is vague to the point that individuals and businesses cannot know *ex ante* whether their actions violate the statute.  The law fails to define or explain, *inter alia*, the terms "import into this state," "for commercial purposes," and "to possess with intent to sell."  Without adequate guidance as to how it can be followed, Section 653o(b) "contravene[s] the 'first essential of due process of law' that statutes must give people of 'common intelligence' fair notice of what the law demands of them."  *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019) (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)).  The law also fails to adequately define its purported subject: crocodiles and alligators.  The law is unduly vague and internally inconsistent, and cannot withstand a constitutional Due Process

5

AMENDED COMPLAINT

4817-5781-8286v.1

1  challenge.

2       14.     If Section 653o(b) is allowed to take effect, *one* state will singlehandedly cripple a

3  federally-authorized, economically viable, and internationally renowned conservation-oriented

4  global industry.  The Constitution of the United States does not allow for such a result.

5  **THE PARTIES**

6       15.     Plaintiff Brooks Family Alligator Farm II ("Brooks") is a Florida limited liability

7  company with its principal place of business located in Christmas, Florida.  Brooks is a family-

8  owned and operated alligator farm.  Brooks's business involves collecting alligator eggs on public

9  and private lands, incubating and hatching the eggs on the farm, and raising the animals

10  agriculturally until they are ready for harvest and sale or for reintroduction into the wild.  Upon

11  harvest, and as required by federal law, a CITES tag, issued by the Florida Fish and Wildlife

12  Conservation Commission, must be immediately applied to each alligator.  Once the skins have

13  been processed, the CITES tag must remain in place and any skins that are shipped from the farm

14  must be accompanied by a corresponding tag list detailing the species and number of skins in the

15  shipment.  In order to export any of these skins, Brooks maintains an export license and applies for

16  an export permit from FWS for every shipment which documents, among other things, the number

17  of skins in the shipment, the scientific name of the species (in this case, *Alligator*

18  *mississippiensis*), the country of origin, and the name of the importing entity and exporting entity.

19  Any prohibition on the sale of alligators or their products in California would depress the value of

20  these farm-raised alligators, causing Brooks significant economic harm with the potential to go out

21  of business.  Indeed, the imminent nature of this ban has already caused Brooks to lose a major,

22  irreplaceable international business opportunity.

23       16.     Plaintiff Louisiana Alligator Farmers & Ranchers Association ("LAFRA") is a

24  Louisiana non-profit corporation with its principal place of business located in Abbeville,

25  Louisiana.  LAFRA was formed in 1989 to represent the commercial and conservation interests of

26  all alligator farmers and ranchers residing in the State of Louisiana.  LAFRA works with state and

27  local wildlife agencies, private coastal wetlands landowners, and other industry participants in the

28  supply chain to ensure the continued vitality and prosperity of one of the greatest conservation

6

AMENDED COMPLAINT

success stories in the world, the American alligator.  LAFRA members' operations range in size and location across the state, but every operation depends on collecting alligator eggs and then raising those alligators agriculturally on their farms.  All LAFRA members must maintain licenses issued by the Louisiana Department of Wildlife and Fisheries and tag each harvested animal with a CITES tag.  Exporters must also maintain export licenses from FWS and apply for any necessary export permits.  Approximately ten percent of all farm-raised alligators are legally required to be released back into the wild to ensure sustainable populations.  Farmers enter into strictly-regulated contracts with the State of Louisiana or the private landowners to collect the eggs from these wetlands.  Due to the value of alligator leather and alligator products, many private landowners therefore receive a direct financial incentive to protect and enhance the Louisiana wetlands that provide vital habitat for these alligators and thousands of other non-game species that inhabit these ecosystems.  Any prohibition on the sale of alligators, their parts, or their products in California would depress the value of these farm-raised alligators, thereby causing significant economic harm to each member of LAFRA and simultaneously disincentivizing and reducing funding for the proactive conservation efforts of these private landowners to protect and enhance these wetlands, upsetting nearly forty years of scientifically backed pro-conservation work.

17.    Plaintiff AMTAN Louisiana ("AMTAN LA") is a Wyoming limited liability company with its principal place of business located in St. Martinville, Louisiana.  AMTAN LA is a fifth-generation, family-owned purchaser and processor of wild alligators harvested in Louisiana.  AMTAN LA purchases raw, freshly-harvested whole alligators, prepares the raw skins for sale, and sells legally harvested, CITES-tagged alligator skins to tanneries.  AMTAN LA also sells fresh alligator meat to butchers and processors who then sell it to wholesalers, restaurants, and markets.  Finally, AMTAN LA sells the skulls, teeth, and feet to taxidermists who then sell them as local bibelots to tourists.  Any prohibition on the sale of alligators or their products in California would prevent AMTAN LA from selling alligator products to its California-based clients, and would depress the value of AMTAN LA's products on the open market, causing AMTAN LA significant economic harm and potential dissolution of the enterprise.

18.    Plaintiff Magna Leather Corporation ("Magna") is a Texas corporation with its

AMENDED COMPLAINT

4817-5781-8286v.1

principal place of business located in El Paso, Texas.  Magna is a major U.S. manufacturer and supplier of alligator and crocodile leather belts and small accessories.  Magna is also a wholesaler of processed and tanned alligator and crocodile skins for footwear and leather products.  Magna has been a participant in the exotic skins industry since 1996, and the owner and founder's family has been involved in this industry for three generations in Argentina.  Magna purchases raw, wild alligator skins from licensed trappers in Louisiana and Florida; it also purchases tanned Nile and saltwater crocodile leather from farms in Australia and Africa.  Magna maintains an import license from FWS and applies for import permits for every shipment received from overseas.  Magna sells its belts and accessories under a private label to small and medium size retailers, clothiers, department stores, and large brand name retail companies, many of which reside in California.  Any prohibition on the sale of alligators, crocodiles and their products in California would prevent Magna from selling these leather products to its California-based clients, and would depress the value of Magna's products on the open market, causing Magna significant economic harm.  Indeed, the imminent nature of this ban is causing Magna's California buyers to cancel orders and other customers to consider dropping alligator and crocodile products altogether from their retail lines.  As a result, Magna is projecting a 40% reduction in sales for 2020—a direct threat to the economic viability of the company.

19.    Plaintiff Larson Leather Company ("Larson") is a Texas limited partnership with its principal place of business located in Bedford, Texas.  Larson is a multi-generation family business that distributes and resells tanned leather and exotic skins, including alligator and crocodile leather, to manufacturers throughout the country, many of whom rely on the California market for selling their final products.  Larson maintains an import license from FWS and applies for import permits for every shipment received from overseas.  Any prohibition on the sale of alligators, crocodiles and their products in California would prevent Larson from marketing and selling these leathers to its California-based clients, and would depress the value of the products Larson sells, and facilitates the sale of, on the open market, causing Larson significant economic harm.

20.    Plaintiff La Duchesse, Ltd. ("La Duchesse") is a California corporation with its

principal place of business located in Beverly Hills, California. La Duchesse is a retailer specializing in the design, manufacture, and sale of handmade footwear, handbags, and accessories made in full or in part from tanned alligator and crocodile leather. Clients travel from around the world to shop at La Duchesse. La Duchesse distributes its brand and manufactures private label items for clients within the United States, Europe, and the Middle East. La Duchesse maintains an import license from FWS and applies for import permits for every shipment received from overseas. Any prohibition on the sale of alligators, crocodiles and their products in California would prevent La Duchesse from purchasing, marketing, and selling these products, thereby causing La Duchesse severe economic harm. La Duchesse not only stands to lose approximately 85 percent of its gross sales due to the prohibition, but also faces the very real probability of going out of business or relocating to another state to remain in this industry. Indeed, La Duchesse is already facing the threat of immediate liquidation of over $2,000,000 worth of inventory.

21. Plaintiff Bijan Boutiques, LLC d/b/a House of Bijan ("Bijan") is a Delaware limited liability company with its principal place of business located in Beverly Hills, California. Bijan designs and sells merchandise such as jackets, luggage, handbags, shoes, belts, and accessories made from alligator leather. Bijan purchases its alligator products from Italian suppliers who buy their skins solely from long established tanneries that either own or have been doing business for many generations with sustainable alligator farms and breeders located in the southeastern United States, primarily Louisiana. Bijan maintains an import license from FWS and applies for import permits for every shipment received from overseas. Any prohibition on the sale of alligators and their products in California would prevent Bijan from purchasing, marketing, and selling alligator products, thereby causing Bijan severe economic harm, if not causing it to cease operations entirely.

22. Plaintiff April in Paris is a woman-owned California sole proprietorship, with its principal place of business located in San Francisco, California. April in Paris manufactures custom accessories from exotic skins leather, including alligator leather, and sells those accessories directly to customers. Alligator products account for a large portion of April in Paris's sales—roughly 40 percent of its inventory of small accessories, including watchbands, belts, and

wallets, come from alligator leather.  The owner of April in Paris also operates an atelier based in San Francisco, California. The atelier has three employees who teach clients the unique art of manufacturing exotic leathers, like alligator, and has trained over 400 students since its establishment.  April in Paris does not import any crocodile leather, so it is not required to maintain an import license from FWS; however, every shipment of alligator leather contains individual, CITES-tagged skins which also have a corresponding tag list and other appropriate documentation as required by FWS and state wildlife agencies.  A significant portion of April in Paris's business will disappear if California prohibits the sale of alligators and their products, thereby causing April in Paris to suffer enormous economic loss, including the possibility of liquidated inventory, dissolution, and potential relocation to another state to remain in the industry.

23.     Plaintiff Hogwards Carry Goods d/b/a Chester Mox ("Chester Mox") is a woman and minority-owned California sole proprietorship located in Monterey Park, California.  Chester Mox is a husband and wife-run artisan manufacturer and online retailer of luxury alligator products and accessories, including wallets, handbags, and belts.  Chester Mox sources both its alligator and crocodile leather from domestic suppliers, so it is not required to maintain an import license from FWS; however, every shipment of alligator and crocodile leather contains individual, CITES-tagged skins which also have a corresponding tag list and other appropriate documentation as required by FWS and state wildlife agencies.  Chester Mox cuts, crafts, and assembles all of its products by hand and sells these same items online, with the majority of its sales occurring in the States of New York and California.  Alligator and crocodile products make up roughly 40 percent of Chester Mox's sales revenue.  If California prohibits the sale of alligators and their products, Chester Mox would suffer major economic loss.  Indeed, the imminent nature of this ban has caused Chester Mox to refuse several orders because the time required to hand-craft these orders would stretch beyond January 1.  Without these products to sell and market, Chester Mox will likely be forced to either go out of business or move to another state.

24.     Plaintiff M&D Gator Products, Inc. ("M&D Gator") is a Florida S-Corporation located in Dade City, Florida.  M&D Gator purchases and processes legally-obtained alligator

1   meat from wholesale alligator farms and processors as well as legally-obtained, CITES-tagged

2   raw, whole alligators from individual, state-licensed commercial alligator fishermen throughout

3   the southeastern United States.  M&D Gator processes the alligator meat and resells it worldwide

4   to wholesalers and restaurants.  If California prohibits the sale of alligators and their products,

5   M&D Gator would suffer major economic loss in the form of decreased orders, lost sales and

6   market share, job eliminations, and potential dissolution.

7        25.     Plaintiff SELMINT Pty Ltd. ("SELMINT") is a South African proprietary limited

8   company located in Cape Town, South Africa.  SELMINT stands for "Sustainable Exotic Leather

9   Manufacturing International" and is an atelier which handcrafts sustainably-farmed, CITES-

10  complaint Nile crocodile, ostrich, and python skins into handbags, belts, wallets, and other small

11  leather goods.   SELMINT is a third-generation family-run business with a long legacy of

12  manufacturing products for luxury fashion houses across the world.  Nearly half of SELMINT's

13  revenue is generated from its production of crocodile products.  If California prohibits the sale of

14  crocodiles and their products, SELMINT would suffer major economic loss in the form of

15  decreased orders, lost sales and market share, job eliminations, and potential dissolution.

16       26.     Defendant, the Honorable Xavier Becerra, is the Attorney General of California.  In

17  his official capacity under the California Constitution, the Attorney General is "the chief law

18  officer of the State," with "direct supervision over every district attorney and sheriff and over such

19  other law enforcement officers as may be designated by law."  Cal. Const. Art. 5, § 13.  Under

20  section 12550 of the California Government Code, Defendant Becerra both has "direct supervision

21  over the district attorneys of the several counties" and also may "take full charge of any

22  investigation or prosecution of violations of law," in which case he "has all the powers of a district

23  attorney."  Defendant Becerra is also a peace officer and, as such, has direct authority to enforce

24  Section 653o(b) of the California Penal Code pursuant to Section 653o(c) of the California Penal

25  Code.

26       27.     Defendant Charlton Bonham is the Director of the California Department of Fish

27  and Wildlife.  In his official capacity, the Director of the California Department of Fish and

28  Wildlife administers the regulation of wildlife and products made from wildlife—including

4817-5781-8286v.1

alligators and crocodiles in the State of California. In his official capacity, the Director of the California Department of Fish and Wildlife oversees responsibility for the implementation and enforcement of Section 653(b).

## COMMON ALLEGATIONS

28. The California law concerning the sale of alligators and crocodiles that is subject to this action has been enjoined by this Court since 1979. *Fouke Co. v. Brown*, 463 F. Supp. 1142 (E.D. Cal. 1979). Despite the ongoing permanent injunction, the purportedly newly effective criminal law, Section 653o(b), is scheduled to take effect on January 1, 2020.

29. The Section 653o(b) makes it a crime "to import into this state for commercial purposes, to possess with intent to sell, or to sell within the state, the dead body, or any part or product thereof, of a crocodile or alligator."

30. Section 653o(b) was unconstitutional when *Fouke* was decided, and remains unconstitutional today. In fact, this criminal law violates at least three provisions of the United States Constitution: (1) The Supremacy Clause, (2) the Commerce Clause, and (3) the Due Process Clause.

31. If Section 653o(b) is allowed to take effect on January 1, 2020, California will prohibit what is authorized pursuant to federal laws regulating trade in alligators and crocodiles.

32. The ESA, along with its implementing regulations, expressly permits the importation, sale, and commerce generally of alligators and crocodiles—as well as products made from them.

33. The ESA provides, in pertinent part:

> Any State law or regulation which applies with respect to the importation or exportation of, or interstate or foreign commerce in, endangered species or threatened species is void to the extent that it may effectively . . . *prohibit what is authorized pursuant to an exemption or permit* provided for in this chapter or in any regulation which implements this chapter.

16 U.S.C. § 1535(f) (emphasis added).

34. Courts in this Circuit have consistently found that, pursuant to 16 U.S.C. § 1535(f), the ESA regime under which the federal alligator and crocodile trade is authorized and regulated

4817-5781-8286v.1

1   preempts Section 653o.

2       35.     First, in 1979, this Court held the provisions in California Penal Code Section 653o

3   and then 653r prohibiting the sale of alligator hides were preempted by the ESA.  *Fouke Co. v.*

4   *Brown*, 463 F. Supp. 1142 (E.D. Cal. 1979).

5       36.     *Fouke* explained the ESA preempts California Penal Code Sec. 653o because the

6   California statute at issue herein "purport[s] to prohibit what is authorized pursuant to an

7   exemption or permit provided for by the U.S. Endangered Species Act and regulations

8   implementing it."  *Id.* at 1144 (referencing 16 U.S.C. § 1535(f)).  In finding that the prohibition on

9   alligator sale was preempted, *Fouke* unambiguously concluded: "It is the opinion of the Court that

10  California Penal Code Section[] 653o . . . [is] in direct conflict with the U.S. Endangered Species

11  Act of 1973, particularly Section 6 of said Act."  463 F. Supp. at 1145.

12      37.     Following this holding, *Fouke* ordered:

13          1. Pursuant to the Supremacy Clause of the United States
            Constitution (Article VI, Clause 2), California Penal Code Section[]
14          653o . . . [is] declared unconstitutional and unenforceable as applied
            to American alligator (alligator mississippiensis) hides unless the
15          same are taken, bought, tanned, or fabricated in contravention of the
            U.S. Endangered Species Act of 1973 (16 U.S.C. §§ 1531-1543) or
16          regulations promulgated by the Secretary of Interior of the United
            States implementing said Act, or in contravention of the terms and
17          conditions of a permit or exemption issued pursuant to said act or
            regulations.
18

19          2. Defendants, their agents, employees, and representatives are
            hereby permanently enjoined from enforcing California Penal Code
20          Section[] 653o . . . as applied to American alligator (alligator
            mississippiensis) hides unless the same are taken, bought, tanned, or
21          fabricated in contravention of the U.S. Endangered Species Act of
            1973 (16 U.S.C. §§ 1531-1543) or regulations promulgated by the
22          Secretary of Interior implementing said Act, or in contravention of
            the terms and conditions of a permit or exemption issued pursuant to
23          said act or regulations.
24

25  463 F. Supp. at 1145.

26      38.     The permanent injunction announced in *Fouke* remains in effect today.

27      39.     Four years later, in *Man Hing Ivory and Imports, Inc. v. Deukmejian*, 702 F.2d 760

28  (9th Cir. 1983) ("*Man Hing*"), the Ninth Circuit explained California Penal Code Section 653o(a),

13

AMENDED COMPLAINT

1  which paralleled the language of 653o(b) and prohibited trade in elephant parts within the State of

2  California, was preempted by the ESA.

3       40.    *Man Hing* explained: "The district court determined that the effect of section

4  17.40(e) [of the FWS regulations implementing the ESA] is to preempt operation of California

5  Penal Code § 653o insofar as the state prohibits trade in elephant products by an authorized federal

6  permittee.  We agree."  *Id.* at 764.

7       41.    In doing so, the Ninth Circuit "affirm[ed] the district court's well-considered

8  judgment that section 6(f) of the Endangered Species Act, together with 50 C.F.R. § 17.40(e),

9  preempts California's statutory prohibition on trade in African elephant products by a trader who

10 has secured all necessary federal permits."  *Id.* at 765.

11      42.    *Man Hing* remains the law of this Circuit.

12      43.    That same year, the Ninth Circuit applied that same precedent in *H.J. Justin &*

13 *Sons, Inc. v. Deukmejian*, 702 F.2d 758 (9th Cir. 1983) ("*H.J. Justin*").  In a *per curiam* opinion

14 reversing the lower court, *H.J. Justin* explained "that section 653o could not be applied to the

15 holder of a federal permit for import and export trade in African elephant products."  702 F.2d at

16 759.

17      44.    In reversing the district court, *H. J. Justin* affirmed that *Man Hing* remained (and

18 remains) the law of the Circuit: "The district court here ruled in part that section 653o would

19 prohibit trade within California in elephants products even by a federal permittee.  That part of the

20 district court's decision cannot stand since we held in *Man Hing* that section 653o could not be

21 applied to the holder of a federal permit for import and export trade in African elephant products."

22 *Id.*

23      45.    Based on this Circuit's clear, unambiguous, and undisturbed precedent, the ESA

24 preempts Section 653o(b).

25      46.    The FWS's regulations governing crocodilian species provide, *inter alia*:

26          [Y]ou may import, export, or re-export, or sell or offer for sale,
            deliver, receive, carry, transport, or ship in interstate or foreign
27          commerce and in the course of a commercial activity, threatened
            crocodilian skins, parts, and products without a threatened species

28

permit.

50 C.F.R. § 17.42(c)(3).

47.    The "threatened crocodilian" species covered by these regulations are the: (1) broad-snouted caiman (*Caiman latirostris*) originating in Argentina; (2) brown caiman (*Caiman crocodilus fuscus*, including *Caiman crocodilus chiapasius*); (3) common caiman (*Caiman crocodilus crocodilus*); (4) yacare caiman (*Caiman yacare*); (5) Nile crocodile (*Crocodylus niloticus*); and (6) saltwater crocodile (*Crocodylus porosus*) originating in Australia.  50 C.F.R. § 17.42(c)(1)(i).

48.    Pursuant to the ESA and this Circuit's precedent, Section 653o(b) is expressly and/or impliedly preempted as to the crocodilian species listed above.

49.    FWS's regulations governing alligator species provide, *inter alia*:

> Any person may … deliver, receive, carry, transport, ship, sell, offer to sell, purchase, or offer to purchase such alligator in interstate or foreign commerce, by any means whatsoever and in the course of a commercial activity in accordance with the laws and regulations of the State of taking subject to the following conditions . . .

> (B) Any American alligator specimen may be sold or otherwise transferred only in accordance with the laws and regulations of the State or Tribe in which the taking occurs and the State or Tribe in which the sale or transfer occurs.

50 C.F.R. § 17.42(a).

50.    Unlike the FWS regulations governing the sale of crocodiles, the regulations governing the sale of alligators do reference "the laws and regulations of the . . . State or Tribe in which the sale or transfer occurs."   However, in *Man Hing*, the Ninth Circuit found similar language to be non-dispositive, holding that such language:

> is intended to do no more than implement the [federal permit's] requirement that any trade under a federal permit meet state or federal health, quarantine, customs, and agricultural laws. To read the condition more broadly, as appellants would have us do, would open the way for states to impose regulation to supersede federal regulation of trade in imported endangered species or their export or interstate commerce, a form of state preemption clearly contrary to the intent of Congress in passing the Endangered Species Act.

702 F.2d at 765.

51.    The FWS regulations separately state: "Any person may import or export an American alligator specimen provided that it is in accordance with part 23 of this subchapter."  50 C.F.R. § 17.42.

52.    Pursuant to FWS regulations and Ninth Circuit precedent, any State-based restriction on the import, export, possession with intent to sell, sale, or other form of trade in an American alligator specimen is expressly and/or impliedly preempted.

53.    Plaintiffs trade in alligators, alligator products, crocodiles, and crocodile products that are covered by the sections of the ESA and the FWS regulations preempting Section 653o(b).

54.    Section 653o(b) unlawfully prohibits trade in alligator and crocodile species, causing severe injury to Plaintiffs.  Such injury is already occurring, based on the mere prospect of this imminent, ill-conceived trade ban.

55.    The business enterprises of the above-described Plaintiffs have a significant stake in the alligator and/or crocodile trade industry in, to, and from the State of California.

56.    To the extent it remains in force despite *Fouke*, Section 653o(b)'s ban on trade in alligators and crocodiles will cause significant and irreparable harm to the industry, and to each of the named Plaintiffs who operate within it.

57.    To the extent these losses are economic to Plaintiffs—and to Plaintiff's members, in LAFRA's case—those losses are irrecoverable, due to the State of California's sovereign immunity in this regard.  Such economic loss is also and otherwise irreparable, due to its fundamental nature, to each individual Plaintiff and Plaintiff's members (in LAFRA's case).

58.    Because of its dire effects on interstate commerce, Section 653o(b) also violates the Constitution's Dormant Commerce Clause.  The Dormant Commerce Clause, which stems from the Constitution's Commerce Clause, *Brown v. Maryland*, 25 US 419 (1827), restricts states from regulating commercial activity in a manner reserved for the federal government.  In practice, the Dormant Commerce Clause serves to limit a state's activities negatively affecting interstate commerce.

59.    "All objects of interstate trade merit Commerce Clause protection."   *City of*

16

AMENDED COMPLAINT

*Philadelphia v. New Jersey*, 437 U.S. 617, 622 (1978).  The complete ban in, to, and from California that the State intends to impose trade in on crocodiles, alligators, and products made from them through Section 653o(b) will cause those products and the Plaintiffs trading in them to lose those inherent constitutional protections.

60.     The Supreme Court has repeatedly explained that States can limit the power of interstate commerce, only in narrow circumstances.   If state legislation overtly discriminates against interstate commerce, the law is *per se* invalid:

> The opinions of the Court through the years have reflected an alertness to the evils of "economic isolation" and protectionism . . . where simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected . . . The clearest example of such legislation is a law that overtly blocks the flow of interstate commerce at a State's borders.

*City of Philadelphia*, 437 U.S. at 623–24 (collecting cases).

61.     The illegal and unconstitutional intent and effect of Section 653o(b) is to "block[] the flow of interstate commerce at [California's] borders."  *Id.*  While alligators, crocodiles, and their products can be legally traded nationally and internationally, California's legislation attempts to create a single-state blockade.  A border wall such as this is *per se* unconstitutional.

62.     Even if Section 653o(b) was not *per se* unconstitutional under a Dormant Commerce Clause analysis (which it is), the legislation cannot survive a Dormant Commerce Clause challenge.  That is because a state law not discriminating against interstate commerce will only be upheld if the law effectuates "a *legitimate* local public interest, and its effects on interstate commerce are only incidental."  *City of Philadelphia*, 437 U.S. at 624 (emphasis added).  In such a case, the law "will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."  *Id.*

63.     Section 653o(b)'s economic burden on interstate commerce is real, provable, and significant.  As explained in more detail above, should California's alligator and crocodile trade ban become effective on January 1, Plaintiffs stand to lose millions of dollars annually, and, in many cases, their businesses and livelihoods.  Moreover, California's trade and tourism industry focused on retail sales of exotic leathers and other alligator and crocodile products will suffer.

1    These effects will be experienced by a multilayered, multifaceted domestic and international

2    supply chain.  Far from being incidental, this is an onerous effect on interstate and international

3    commerce, detrimental to the U.S. economy and the well-being of Plaintiffs and the thousands of

4    employees, workers, and contractors who rely on them.

5        64.    By contrast, the legislative history of Section 653o(b) makes clear that the "local

6    public interest" of California in enacting the statutory provision was not simply illegitimate; it was

7    non-existent, at least as to alligators and crocodiles.

8        65.    The legislative history of Section 653o(b) indicates that California Penal Code

9    § 653o was adopted "to protect the local ecology."  *See* Report on Cal. S.B. 128, pp. 5-6 (Sep. 14,

10   1970), attached hereto as Exhibit A.  The legislative history of the statute *acknowledges* that this

11   "putative local interest" does not exist for alligators and crocodiles, which are not native to, and do

12   not naturally reside in, the State of California:

13   　　　　[W]e think that the prohibition of the possession of the dead bodies,
     　　　　or parts or products thereof, for sale or the sale in this state, of the
14   　　　　mammals and reptiles [such as alligators and crocodiles] other than
     　　　　the sea otter and feral horse might be found by a court not to be
15   　　　　necessary to 'protect the local ecology' . . . .

16   　　　　Also the fact that possession for purposes other than sale is not
17   　　　　regulated, and that the prohibition would extend to products of such
     　　　　animals, as well as the dead body or parts thereof, would seem to
18   　　　　cast doubt on the relationship of such legislation to the protection of
     　　　　the local ecology.
19

20   　　　　…

21   　　　　We can conceive of no necessary relationship between the
     　　　　prohibition of possession or sale of products of such other dead
22   　　　　mammals or reptiles [including alligators and crocodiles] and a local
     　　　　public interest or the local ecology except in a situation [not present
23   　　　　here] where such products might constitute a health hazard – for
     　　　　example, if the product was for human consumption and was
24   　　　　determined to be unfit therefor.

25   Report on Cal. S.B. 128, pp. 6-7 (emphasis in original).

26

27       66.    Thus, at the time California Penal Code Section 653o was enacted, the State

28   legislature acknowledged and knew full well that the only putative local public interest in

18

AMENDED COMPLAINT

1    regulating trade in alligators and crocodiles (other than for human consumption) was non-existent.

2    Nonetheless, California enacted the law in 1970, and nonetheless California will purportedly

3    enforce the law on or after January 1, 2020, despite *Fouke*'s permanent injunction, which remains

4    in effect.

5         67.    California may not now invent *post hoc* "local benefits" for Section 653o(b) which

6    did not exist, and were not contemplated, at the time of the statute's adoption.  Indeed, since the

7    law's enactment in 1970, American alligators are no longer endangered, and are in fact

8    flourishing.

9         68.    Crocodilian species in international trade, more generally, are also experiencing

10   marked conservation benefits from trade pursuant to the international regime, based on CITES, to

11   which the United States is a signatory and based on which FWS implements the referenced

12   regulations pursuant to the ESA.

13        69.    Because the real, detrimental economic effect of Section 653o(b) on interstate and

14   international commerce and conservation is great, and because any "local benefits" to Section

15   653o(b) are illusory, Section 653o(b) violates the Dormant Commerce Clause, and should be

16   declared unconstitutional.

17        70.    Moreover, the law infringes on the Constitution, causing severe injury to Plaintiffs

18   and similarly situated individuals.  If the law comes into effect, in whole or in part, the entire

19   supply chain for the sale of alligators, crocodiles, and their products would be materially disrupted

20   and, in relevant elements, destroyed.

21        71.    Section 653o(b) also violates the United States Constitution's Due Process Clause.

22        72.    California Penal Code § 653o is a criminal statute.   Section 653o(c) imposes

23   criminal penalties "of not less than one thousand dollars ($1,000) and not to exceed five thousand

24   dollars ($5,000) or imprisonment in the county jail not to exceed six months, or both that fine and

25   imprisonment, for each violation" of Section 653o(b).  *See* Cal. Penal Code § 653o(c).

26        73.    In *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019), the Supreme Court

27   recently affirmed that:

28             In our constitutional order, a vague law is no law at all.  Only the

AMENDED COMPLAINT

people's elected representatives in Congress have the power to write new federal criminal laws.   And when Congress exercises that power, it has to write statutes that give ordinary people fair warning about what the law demands of them.   Vague laws transgress both of those constitutional requirements.   They hand off the legislature's responsibility for defining criminal behavior to unelected prosecutors and judges, and they leave people with no sure way to know what consequences will attach to their conduct.   When Congress passes a vague law, the role of courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again.

74.   "Vague laws contravene the first essential of due process of law that statutes must give people of common intelligence fair notice of what the law demands of them." *Id.* at 2325 (quotations omitted).   In the context of a criminal statute such as Section 653o(b), a "statute that flouts [clarity] violates the first essential of due process." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015).

75.   In this Circuit, in order to allege that a statute, or portions of a statute, are void for vagueness, a plaintiff need only "state a plausible claim that the statute is unconstitutionally vague by asserting that the statute fails to provide sufficient notice to enable persons to understand what conduct is prohibited." *Cooper v. Clark County*, 519 Fed. App'x 479, 483 (9th Cir. 2013).   A district court in this Circuit has explained that the Ninth Circuit has "lowered the burden for parties, like plaintiffs, that bring facial void for vagueness challenges as the government cannot defeat challenges by simply offering a single example where a law could be clearly applied." *Helicopters for Agric. v. Cty. of Napa*, 384 F. Supp. 3d 1035, 1039 (N.D. Cal. 2019).

76.   Section 653o(b) squarely fails the Due Process test.   It violates due process because, among other above-stated reasons, it is unconstitutionally vague.

77.   California Penal Code § 653o(b)(1) reads, in full: "Commencing January 1, 2020, it shall be unlawful to ***import into this state for commercial purposes***, ***to possess with intent to sell***, or to sell within the state, the dead body, or any part or product thereof, ***of a crocodile or alligator***." (Emphasis added.)   The emphasized sections are unconstitutionally vague, for, among others, the reasons set forth below.

78.   Section 653o(b)'s statement prohibiting "import into this state" is vague.   The

AMENDED COMPLAINT

4817-5781-8286v.1

statute does not specify who would be liable for the importation into the state – the entity sending the crocodile or alligator, the entity receiving it, or both.  It is also unclear from the statute whether the term "import" is intended to apply to foreign or interstate commerce, or both.

79.     This vague language is unconstitutional, and violates due process, because it "threaten[s] to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide." *United States v. Davis*, 139 S. Ct. at 2325.

80.     Because Section 653o(b) does not clarify with precision which individual would be liable for a violation, it must be found to be unconstitutionally vague.

81.     The clause "for commercial purposes" in Section 653o(b) is also vague, as the statute never defines the term commercial purposes.  Without a definition, it is impossible for an individual to know with certainty whether or not he or she is in compliance with the criminal law.

82.     Because the statute causes potential defendants—such as Plaintiffs—to guess at whether they could be found liable, it is unconstitutionally vague.

83.     In a similar context, a district court in this Circuit recently found that the word "unavoidable" was "unduly vague," writing:

> Does ["unavoidable"] mean that the crop will fail without that particular aerial spraying?  Does it mean that ground-based spraying—as in hand spraying—would not suffice?  Does it mean that the flight is barred if it is physically possible to take off and land from a municipal airport?  Or does it simply mean that if aerial spraying is used, the task must be accomplished in the fewest number of flights possible?  Yes, the word "unavoidable" has been upheld in other contexts but here the context lends itself to too many possibilities.

*Helicopters for Agric*, 384 F. Supp. 3d at 1040.

84.     Because it has not provided a definition of the term "commercial purposes," Section 653o(b) should be found null and void, as it is unconstitutionally vague.

85.     Furthermore, the phrase "to possess with intent to sell" is unconstitutionally vague.

86.     It is facially unclear from the statute where a person would need to "inten[d]" to sell the item to be criminally liable.  The statute could be read to mean that an individual is liable

AMENDED COMPLAINT

1  if he intends to sell anywhere in the world.  Alternatively, the statute could just as easily be read to

2  mean that an individual could only be liable if he intends to sell an alligator or crocodile (or their

3  products) within the State of California, and that the individual would not be liable for *exporting*

4  an alligator or crocodile (or their products) from California to another State.

5       87.     The language of the statute makes each of these readings equally valid.  Because

6  these contrary readings are both potential, legitimate readings of Section 653o(b), it must be found

7  null and void, as it is unconstitutionally vague.

8       88.     Finally, the phrase "of a crocodile or alligator" is unconstitutionally vague.

9       89.     A facial reading of the statute would likely include *all* alligator and crocodile

10  species in Section 653o's prohibition.

11      90.     Four species of caiman in commerce are likewise a crocodilian species, managed

12  under 50 CFR § 17.42(c) along with Nile and saltwater crocodiles.  However, recent California

13  legislation, A.B. 1260, which will go into effect on January 1, 2020, amends Section 653o to allow

14  caiman and their products to be sold within the State of California until January 1, 2022.  The new

15  caiman subsection of Section 653o explicitly contradicts the still-existing language in Section

16  653o(b) prohibiting sale of crocodiles or their products in Section 653o.

17      91.     The question of whether persons may sell caiman—a crocodilian species—in the

18  State of California between January 1, 2020 and January 1, 2022 is causing significant confusion

19  within the alligator and crocodile industry.

20      92.     Because following January 1, 2020, the language of Section 653o will be internally

21  inconsistent, resulting in confusion as to whether a criminal statute will be violated, Section 653o

22  must be found null and void, as it is unconstitutionally vague.

23                               **COUNT I**
24  **(Declaratory and Injunctive Relief Pursuant to 42 U.S.C. § 1983 – Violation of the
     Supremacy Clause of the United States Constitution Due to Preemption)**

25      93.     Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint

26  as if fully set forth and alleged herein.

27      94.     Pursuant to the United States Constitution's Supremacy Clause, federal law is the

28

4817-5781-8286v.1

1   supreme law of the land.

2       95.     Federal law preempts state law where, as here, there is an express intent to preempt

3   state law through explicit statutory language.

4       96.     In 16 U.S.C. § 1535(f), Congress expressly states:

5           Any State law or regulation which applies with respect to the
            importation or exportation of, or interstate or foreign commerce in,
6           endangered species or threatened species is void to the extent that it
            may effectively . . .  prohibit what is authorized pursuant to an
7           exemption or permit provided for in this chapter or in any regulation
            which implements this chapter.
8

9       97.     The regulations, permits, licenses, and other legally operative instruments

10  implementing the ESA and under which Plaintiffs operate or rely on expressly prevent any state

11  from prohibiting the sale of regulated alligators and alligator products.

12      98.     The regulations, permits, licenses, and other legally operative instruments

13  implementing the ESA and under which Plaintiffs operate or rely on also prevent any state from

14  prohibiting the sale of regulated crocodiles and crocodile products.

15      99.     To the extent these federal regulations, permits, licenses, and other legal

16  instruments regarding these alligators and crocodiles do not expressly preempt Section 653o(b),

17  they impliedly do.

18      100.    Should Section 653o(b) become effective on January 1, 2020, Plaintiffs will suffer

19  significant financial harm, including the potential to lose their businesses entirely.  Plaintiffs'

20  alternative is to risk criminal prosecution under Section 653o(b).

21      101.    Because Section 653o(b) attempts to prohibit the sale and trade of regulated

22  crocodiles, alligators, and their products, despite federal law's express and/or implied

23  authorization of such activities, this Court should use its powers pursuant to 28 U.S.C. § 2201 to

24  declare Section 653o(b) null and void, and with no force or effect.

25      102.    Because Section 653o(b)'s prohibition of the sale and trade of regulated crocodiles,

26  alligators, and their products, despite federal authorization of such activities, would cause

27  significant, unrecoverable, irreparable economic, social, and conservation damage to Plaintiffs

28  and the relevant species should it become effective on January 1, 2020, this Court should issue a

AMENDED COMPLAINT

4817-5781-8286v.1

1   temporary restraining order, preliminary injunction, and permanent injunction, enjoining the

2   enforcement of Section 653o(b), to the extent *Fouke* does not already impose applicable

3   permanent injunctive relief.

4        103.   In any event, this Court should issue a declaratory judgment confirming that the

5   permanent injunction issued in *Fouke Co. v. Brown*, 463 F. Supp. 1142 (E.D. Cal. 1979), remains

6   in full force and effect, and that any enforcement of Section 653o(b) must continue to be

7   permanently enjoined.

**COUNT II**

8   **(Declaratory and Injunctive Relief Pursuant to 42 U.S.C. § 1983 – Violation of the**

9   **Commerce Clause of the United States Constitution)**

10        104.   Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint

11   as if fully set forth and alleged herein.

12        105.   The Constitution's Dormant Commerce Clause prevents states from unduly

13   interfering with interstate commerce.

14        106.   Section 653o(b), if allowed to take effect on January 1, 2020, will greatly interfere

15   with interstate and international commerce and conservation efforts for the relevant species, to the

16   significant economic and financial detriment of Plaintiffs and other similarly situated persons and

17   to the detriment of those species.

18        107.   If allowed to take effect on January 1, 2020, Section 653o(b) would impermissibly

19   "overtly block[] the flow of interstate commerce [in crocodiles, alligators, and their products] at

20   [California's] borders." *City of Philadelphia*, 437 U.S. at 624.

21        108.   Section 653o(b) is therefore unconstitutional, as it *per se* violates the Dormant

22   Commerce Clause.

23        109.   Section 653o(b) also violates the Dormant Commerce Clause because it severely

24   restricts interstate commerce, with no corresponding putative local benefit to Californians.

25        110.   State legislation, such as Section 653o(b), cannot withstand constitutional scrutiny

26   as it significantly restricts interstate commerce and will cause millions of dollars in financial and

27   other forms of harm annually, while simultaneously providing no local benefits.

28

4817-5781-8286v.1

111.    Because Section 653o(b) attempts to prohibit the sale and trade of regulated crocodiles, alligators, and their products in violation of the Dormant Commerce Clause, this Court should use its powers pursuant to 28 U.S.C. § 2201 to declare Section 653o(b) null and void, and with no force or effect.

112.    Because Section 653o(b)'s prohibition of the sale and trade of crocodiles, alligators, and their products violates the Dormant Commerce Clause, and would cause significant, unrecoverable economic and other forms of damage to Plaintiffs and the relevant species should it be allowed to become effective on January 1, 2020, this Court should issue a temporary restraining order, preliminary injunction, and permanent injunction, enjoining the enforcement of Section 653o(b), for violating the Dormant Commerce Clause.

## COUNT III
**(Declaratory and Injunctive Relief Pursuant to 42 U.S.C. § 1983 – Violation of the Due Process Clause of the United States Constitution Due to Vagueness)**

113.    Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth and alleged herein.

114.    Section 653o(b) is unconstitutionally vague to the extent that it violates the Due Process Clause rights of Plaintiffs and other similarly situated persons and entities, in at least the following respects:

- Section 653o(b) fails to adequately define or explain the phrase "import into this state";

- Section 653o(b) fails to adequately define or explain the phrase "for commercial purposes";

- Section 653o(b) fails to adequately define or explain the phrase "to possess with intent to sell."

- Section 653o(b) fails to adequately define or explain the phrase "crocodile or alligator."

115.    Section 653o(b)'s vagueness applies to the detriment of Plaintiffs and other

AMENDED COMPLAINT

similarly situated persons and entities who cannot be sure whether or not their actions will violate the criminal statute.  Plaintiffs and other similarly situated persons and entities thereby cannot be sure whether or not their actions will subject them to severe financial penalties of up to $5,000 per violation and/or imprisonment for six months per violation.

116.   Such uncertainty is unconstitutional—especially so in this case, where the State of California has discretion to punish violations of the vague statute with deprivation of liberty.

117.   Because Section 653o(b) is unconstitutionally vague in violation of Due Process, this Court should use its powers pursuant to 28 U.S.C. § 2201 to declare Section 653o(b) null and void, and with no force or effect.

118.   Because Section 653o(b) is unconstitutionally vague in violation of the Due Process Clause, putting Plaintiffs in the position of potentially suffering criminal penalties, including imprisonment, for actions that may or may not be statutorily implicated, preliminary injunction, and permanent injunction, enjoining the enforcement of Section 653o(b), for violating the Due Process Clause.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.   Issue a Temporary Restraining Order, confirming Defendants lack authority to enforce California Penal Code § 653o(b) as to American alligators, due to the ongoing permanent injunction this Court issued in *Fouke Co. v. Brown*, 463 F. Supp. 1142 (E.D. Cal. 1979);

2.   Issue a Temporary Restraining Order, preventing Defendants from enforcing California Penal Code § 653o(b) as to regulated crocodiles;

3.   Preliminarily enjoin Defendants from enforcing California Penal Code § 653o(b);

4.   Permanently enjoin Defendants from enforcing California Penal Code § 653o(b);

5.   Enter a declaratory judgment finding that the permanent injunction this Court issued in *Fouke Co. v. Brown*, 463 F. Supp. 1142 (E.D. Cal. 1979), remains in force and effect and continues to bind Defendants, who lack authority to enforce § 653o(b) as to regulated alligators;

6.   Enter a declaratory judgment finding that California Penal Code § 653o(b) is unconstitutional, null and void, and with no force or effect, for the reasons explained above;

26

AMENDED COMPLAINT

7.    Award Plaintiffs reasonable attorneys' fees and costs to the extent permitted by law, including but not limited to those attorneys' fees and costs permitted by, *inter alia*, 42 U.S.C. § 1988; and

8.    Order such other and further relief as the Court deems just and proper.

Dated: December 13, 2019

By:_____/s/ *Christopher D. Hughes*_____

NOSSAMAN LLP
Paul S. Weiland (SBN 237058)
Benjamin Z. Rubin (SBN 249630)
Christopher D. Hughes (SBN 254864)
621 Capitol Mall, Suite 2500
Sacramento, CA 95814
Telephone: (916) 442-8888
Facsimile: (916) 442-0382
pweiland@nossaman.com
brubin@nossaman.com
chughes@nossaman.com

By:_____/s/ *David E. Frulla*_____

KELLEY DRYE & WARREN LLP
David E. Frulla (*pro hac vice* forthcoming)
Bret A. Sparks (*pro hac vice* forthcoming)
Bezalel A. Stern (*pro hac vice* forthcoming)
Elizabeth C. Johnson (*pro hac vice* forthcoming)
3050 K Street NW, Suite 400
Washington, DC 20007
Telephone:  (202) 342-8400
Facsimile:  (202) 342-8451
dfrulla@kelleydrye.com
bsparks@kelleydrye.com
bstern@kelleydrye.com
ejohnson@kelleydrye.com

*Counsel for Plaintiffs*

AMENDED COMPLAINT

4817-5781-8286v.1