1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   APRIL IN PARIS, et al.,                    No.  2:19-cv-02471-KJM-CKD

12                    Plaintiffs,

13        v.

14   XAVIER BECERRA, et al.,

15                    Defendants.

16                                              No.  2:19-cv-02488-KJM-CKD

17   LOUISIANA WILDLIFE AND
     FISHERIES COMMISSION, et al.,

18                    Plaintiffs,               ORDER

19        v.

20   XAVIER BECERRA, et al.,

21                    Defendants.

22

23          Plaintiffs April in Paris, AMTAN Louisiana, Brooks Family Alligator Farm II,

24   Hogwards Carry Goods, Bijan Boutiques, LLC, LA Duchesse, LTD, Larson Leather Company,

25   Louisiana Alligator Farmers & Ranchers Association, Magna Leather Corporation, M&D Gator

26   Products, Inc. and SELMINT Pty. Ltd. move for a preliminary injunction against Xavier Becerra

27   in his official capacity as Attorney General of California and Charlton H. Bonham, in his official

28   capacity as Director of the California Department of Fish and Wildlife ("the California

                                              1

defendants"), enjoining defendants from enforcing California Penal Code sections 653o and 653r with respect to the importation and sale of American alligator, Nile crocodile and saltwater crocodile parts.  Mot., ECF No. 13.  The parties previously stipulated to the entry of a temporary restraining order to remain in place pending a decision on the preliminary injunction motion.  Stip., ECF No. 29.  The California defendants oppose the motion.  Opp'n, ECF No. 37.  The court granted the United States leave to file an *amicus curiae* brief.  USA Amicus Brief, ECF No. 34–1.  The court also granted the motion to intervene as defendants brought by the Humane Society of the United States, Humane Society International and the Center for Biological Diversity ("the intervenor defendants").  Intervention Order, ECF No. 43.  Intervenors oppose the motion for preliminary injunction.  Intervenor Opp'n, ECF No. 38–1.  Plaintiffs filed separate replies.  Pl.'s Reply to California Defs., ECF No. 45; Pl.'s Reply to Intervenor Defs., ECF No. 46.

On June 5, 2020, the court heard oral argument on the motion by video hearing.  The hearing was consolidated with an analogous motion for preliminary injunction in a related case, *Delacroix Corp. et al. v. Becerra*, No. 2:19-02488-KJM-CKD, which the court formally consolidates with this one as explained below.  The court considered the moving papers filed in that action in resolving the motion.[1]  *Delacroix* Mot., ECF No. 2; *Delacroix* California Opp'n, ECF No. 34, *Delacroix* Intervenor Opp'n*, ECF No. 35-1; *Delacroix* Reply to Calif. Defs., ECF No. 40; *Delacroix* Reply to Intervenor Defs., ECF No. 43.

Attorneys David Frulla, Christopher Hughes and Bret Sparks appeared for plaintiffs in this action.  In the related case, counsel Scott St. John, Jeffrey Harris and Taylor Darden appeared for the Louisiana Wildlife and Fisheries Commission, Melinda Brown appeared for Delacroix Corporation and M. Taylor Darden appeared for the Louisiana Landowners Association, Inc.  Counsel Ali Karaouni and Linda Garanda appeared for the California defendants in both cases.  Certified law students William Conlon and Erika Imwald appeared for the intervenor defendants under the supervision of Deborah Sivas and Alicia Thesing at the Mills Legal Clinic at Stanford Law School in both cases.  Having read and considered the facts and the

---

[1] All citations to moving papers prefaced *Delacroix* are to the docket in Case No. 2:19-cv-02488-KJM-CKD.  Citations are to the *April in Paris* docket by default.

1   applicable law, as well as argument at hearing, the court GRANTS the plaintiffs' motion in *April*

2   *in Paris v. Becerra*, Case No. 2:19-cv-02471.  Because plaintiffs in the *Delacroix* action

3   requested substantially identical relief against identical parties in their motion, that motion is

4   DENIED as moot.  Furthermore, the court consolidates the actions.

5   I.     <u>FACTUAL BACKGROUND</u>

6          Plaintiffs initiated this action on December 10, 2019, Compl., ECF No. 1, and filed

7   the operative first amended complaint on December 13, 2019.  First Am. Compl. ("FAC"),

8   ECF No. 8.  On December 16, 2019, plaintiffs moved for a temporary restraining order and

9   preliminary injunction.  Mot.

10          Plaintiffs are various businesses engaged in the distribution and sale of products

11   made from alligator and crocodile parts.  FAC ¶ 4.  They sue to enjoin the enforcement of

12   provisions of California Penal Code sections 653o and 653p, which had been scheduled to take

13   effect January 1, 2020, that would criminalize the sale and possession for sale of alligator and

14   crocodile parts in California.  Plaintiffs make three claims:  (1) the new law is preempted under

15   the Supremacy Clause; (2) the law violates the dormant Commerce Clause; and (3) the law

16   violates the Due Process Clause.  *See generally* FAC.  Their motion for a preliminary injunction

17   relies only on the preemption argument.  Mem. P. & A. at 7, ECF No. 14.

18          Plaintiffs use and sell three species of crocodilian: the American alligator

19   (*Alligator mississippiensis*), Nile crocodile (*Crocodylus niloticus*), and the saltwater crocodile

20   (*Crocodylus porosus*).  FAC ¶ 5.  All three species are classified as Appendix II species under the

21   Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"),

22   defined as species "not necessarily threatened with extinction, but in which trade must be

23   controlled in order to avoid utilization incompatible with their survival."[2]  *Id.*

24

25   [2] The Nile crocodile is on the Appendix I list of threatened species, with the exception of the populations of Botswana, Egypt, Ethiopia, Kenya, Madagascar, Malawi, Mozambique, Namibia,

26   South Africa, Uganda, the United Republic of Tanzania (subject to an annual export quota), Zambia and Zimbabwe, which are included in Appendix II.  The saltwater crocodile is on the

27   Appendix I list of threatened species, with the exception of the populations of Australia, Indonesia, portions of Malaysia, and Papua New Guinea, which are on Appendix II.  Appendices

28   I, II, and III, Convention on Int'l Trade in Endangered Species of Wild Fauna and Flora, (Aug.

1    As points in the supply chain for alligator and crocodile skin products, plaintiffs

2  variously raise crocodilians from eggs, purchase and process their bodies for skin and meat, tan

3  and craft the skins into leather, manufacture the skins into a range of leather goods and sell these

4  products at retail.  *Id.* ¶ 7.  They assert enforcement of sections 653o and 653r would cause them

5  lost sales and cancelled orders, inventory liquidations, job eliminations, erosion of goodwill and

6  business relationships, business dissolutions and forced relocations, constituting irreparable

7  injury.  Mem. P. & A. at 10, ECF No. 14.

8    A.  California Penal Code Section 653o

9    California Penal Code section 653o states:

10    Commencing January 1, 2020, it shall be unlawful to import into this
     state for commercial purposes, to possess with intent to sell, or to sell
11    within the state, the dead body, or any part or product thereof, of a
     crocodile or alligator.
12

13  Cal. Pen. Code § 653o(b)(1).  The crime is defined as a misdemeanor punishable by a fine of

14  between $1,000 to $5,000, imprisonment in a county jail not to exceed six months, or both.  Cal.

15  Pen. Code § 653o(c).  California Penal Code section 653r also makes it unlawful to "possess with

16  intent to sell, or to sell, within this state, after June 1, 1972, the dead body, or any part or product

17  thereof, of any fish, bird, amphibian, reptile, or mammal specified in Section 653o or 653p."

18  Cal. Pen. Code § 653r (added by Stats. 1971, c. 1283, p. 2512,§ 2).

19    In 1979, a judge of this court permanently enjoined then-Governor Edward G.

20  Brown and then-Attorney General Evelle J. Younger from enforcing Sections 653o and 653r

21  against trade in American alligator parts.  *Fouke Co. v. Brown*, 463 F. Supp. 1142 (E.D. Cal.

22  1979).  At that time, the American alligator was classified as endangered under the federal

23  Endangered Species Act of 1973 ("ESA"), and the plaintiffs possessed a license to trade in its

24  parts.  *Id.* at 1144.  The court held the Penal Code sections were directly preempted by the ESA,

25  and thus unconstitutional and unenforceable as applied to American alligator hides unless the

26

27  28, 2020), https://cites.org/eng/app/appendices.php (last accessed 10/8/2020).  At least one
     plaintiff clarifies the Nile and saltwater crocodiles at issue are the Appendix II-classified
28  populations.

4

hides were taken, bought, tanned or fabricated in violation of federal law or regulation. *Id.* at 1145. The *Fouke* court issued a permanent injunction barring the enforcement of those statutes as to American alligator parts. *Id.* The *Fouke* injunction has never been dissolved or modified, and once a permanent injunction has been entered without a fixed date of termination, it continues indefinitely. *Cf. United States v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985) (analyzing indefinite permanent injunction).

The provisions of section 653o making the sale of alligator and crocodile parts unlawful remained in the California Penal Code until 2006. Cal. Pen. Code § 653o (1970) (originally enacted as Stats. 1970, ch. 1557, § 1, p. 3186). In 2006, the California Legislature amended the law to include a sunset provision, removing alligators and crocodiles from the list of protected animals and introducing a provision that importation and sale of their body parts would again become illegal January 1, 2010. Cal. S.B. No. 1485, 2005-2006 Reg. Sess. (Cal. 2006). Several subsequent amendments extended the date of the sunset provision, most recently to January 1, 2020. Cal. A.B. No. 2075, 2013-2014 Reg. Sess. (Cal. 2014). The Legislature passed the most recent re-enactment of the law without a revision of the sunset provision, making the sales of alligator or crocodile parts illegal in California once again as of January 1, 2020. Cal. A.B. No. 1260, 2019-2020 Reg. Sess. (Cal. 2019).

B.  Federal Law Regulating Sale and Importation of Crocodilian Species

The ESA governs the treatment of endangered and threatened wildlife in the United States. Section 6(f) of the ESA, codified as 16 U.S.C. § 1535(f), addresses conflicts between federal and state laws:

> Any State law or regulation which applies with respect to the importation or exportation of, or interstate or foreign commerce in, endangered species or threatened species is void to the extent that it may effectively (1) permit what is prohibited by this chapter or by any regulation which implements this chapter, or (2) **prohibit what is authorized pursuant to an exemption or permit provided for in this chapter or in any regulation which implements this chapter.** This chapter shall not otherwise be construed to void any State law or regulation which is intended to conserve migratory, resident, or introduced fish or wildlife, or to permit or prohibit sale of such fish or wildlife. State law or regulation respecting the taking of an endangered species or threatened species may be more restrictive than the exemptions or permits provided for in this chapter

1    or in any regulation which implements this chapter but not less
2    restrictive than the prohibitions so defined.

3    16 U.S.C. § 1535(f) (emphasis added).

4               1.   United States Fish and Wildlife Service Regulations

5               The ESA grants authority to the Secretary of the Interior to designate endangered

6    and threatened species.  16 U.S.C. § 1533.  The Nile crocodile and saltwater crocodile population

7    of Australia are designated as threatened species, saltwater crocodiles outside of Australia are

8    endangered, and the American alligator is listed as threatened due to similarity of appearance.

9    50 C.F.R. 17.11.  The regulations for these species are discussed in greater detail below.

10              2.   Convention on International Trade in Endangered Species

11              International trade in endangered and threatened species parts is governed by the

12   Convention on International Trade in Endangered Species ("CITES").  CITES sets three tiers of

13   protection for trade in animal parts: Appendix I lists animals threatened with extinction, subject to

14   the most stringent restrictions, Appendix II lists animals not currently threatened but that may

15   become so if not regulated, and Appendix III lists species added at the request of signatory

16   countries to obtain international cooperation in controlling trade.  Declaration of Christine Redd

17   ("Redd Decl."), Ex. 2, ECF No. 14-12.  CITES is a non-self-executing international treaty.  It is

18   implemented in the ESA at 16 U.S.C. § 1537a; it is implemented in federal regulation in 50

19   C.F.R. §§ 13, 17 and 23.

20              CITES sets out a detailed system of regulation for international trade in the species

21   at issue in this case, as implemented by federal regulation.  50 C.F.R. § 23.70.  Among other

22   things, all skins and parts for international trade must be tagged and labelled with a self-locking

23   tag including a unique serial number.  50 C.F.R. 23.70(d)–(f).  This requirement is incorporated

24   by reference in the regulation governing domestic trade in the subject species within the United

25   States, as discussed further below.

26   /////

27   /////

28   /////

6

1   Plaintiffs argue California Penal Code § 653o is expressly preempted under 16

2   U.S.C. § 1535(f), as the FWS regulations regarding the American alligator and Nile and saltwater

3   crocodiles constitute authorization under an "exemption or permit."  Therefore, section 653o

4   "prohibits what is permitted" under an exemption or permit in violation of 16 U.S.C. § 1535(f).

5   II.    LEGAL STANDARD

6   "A preliminary injunction is an extraordinary remedy, never awarded as of right."

7   *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  In determining whether to issue a

8   preliminary injunction, courts must consider whether the moving party (1) "is likely to succeed on

9   the merits," (2), is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the

10   balance of equities tips in [its] favor, and" (4) "an injunction is in the public interest."  *Id.* at 20.

11   The moving party has the burden of showing this extraordinary remedy is warranted by clear and

12   convincing evidence.  *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("And what is at

13   issue here is […] a plaintiff's motion for preliminary injunctive relief, as to which the

14   requirement for substantial proof is much higher."); *see also Granny Goose Foods, Inc. v.

15   Teamsters*, 415 U.S. 423, 442 (1974).

16   The Ninth Circuit sometimes employs an alternate formulation of the *Winter* test,

17   referred to as the "serious questions" test.  *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012).

18   "'A preliminary injunction is appropriate when a plaintiff demonstrates … that serious questions

19   going to the merits were raised and the balance of hardships tips strongly in plaintiff's favor.'"

20   *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (quoting *Lands

21   Council v. McNair*, 537 F.3d 981, 986-87 (9th Cir. 2008)) (internal quotations omitted).  Under

22   the "serious questions" approach to a preliminary injunction, the court may use a "sliding scale"

23   where "[t]he elements of the preliminary injunction test must be balanced, so that a stronger

24   showing of one element may offset a weaker showing of another."  *Lopez v. Brewer*, 680 F.3d

25   1068, 1072 (9th Cir. 2012).  *Winter* was decided after the initial articulation of the "serious

26   questions" test but does not overrule it.  *Cottrell*, 632 F.3d at 1135.  The "serious questions" test

27   must be applied in conjunction with review of the other two *Winter* factors, likelihood of

28   irreparable injury and whether the injunction is in the public interest.  *Id.*

7

1    III.     DISCUSSION

2           A.   The *Fouke* Injunction

3                  As a preliminary matter, the injunction issued by the judge of this court in *Fouke*

4    *Co. v. Brown*, 463 F. Supp. 1142 (E.D. Cal. 1979), has not been dissolved or modified.  In *Fouke*,

5    the court analyzed the interaction between § 6(f) of the ESA and California Penal Code section

6    653o.  *Id.* at 1144.  The plaintiff tannery held a license issued by the Fish and Wildlife Service

7    under 50 C.F.R. § 17.42 to purchase, possess, sell, transfer and domestically ship American

8    alligator hides.  *Id.*  The *Fouke* court held that because state law prohibited what was expressly

9    authorized under an exemption or permit, it was preempted.  *Id.*  The court permanently enjoined

10   the defendants, including Evelle J. Younger, the then-Attorney General and predecessor-in-

11   interest to defendant Xavier Becerra, from enforcing section 653o as applied to American

12   alligator hides unless violators of § 653o had also separately violated the federal regulatory

13   scheme.  *Id.* at 1145.

14                 To modify or dissolve an injunction, the burden is on the party seeking dissolution

15   to establish "a significant change in facts or law."  *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th

16   Cir. 2019) (quoting *Sharp v. Weston*, 233 F.3d 1166, 1169–70 (9th Cir. 2000)).  It is thus

17   defendants' burden to show why the rationale of *Fouke* no longer applies to the American

18   alligator.  The continued vitality of the *Fouke* injunction merges, for practical purposes, with the

19   question of whether the law is preempted under the regulatory scheme in place today.

20           B.   Preliminary Injunction

21                 1.   Serious Questions

22                 Plaintiffs raise serious questions in arguing the merits of their preemption

23   argument.  "Preemption analysis starts with the assumption that the historic police powers of the

24   states were not to be superseded by the Federal Act unless that was the clear and manifest purpose

25   of Congress."  *City of Columbus v. Ours Garage and Wrecker Serv., Inc.*, 536 U.S. 424, 438

26   (2002) (internal quotations, citation omitted).  As a result, "Congressional intent […] is the

27   ultimate touchstone of preemption analysis."  *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt.*

28   *Dist.*, 498 F. 3d 1031, 1040 (9th Cir. 2007).  When there is an express preemption provision, the

1  court "focus[es] on the plain wording of the clause, which necessarily contains the best evidence

2  of Congress' pre-emptive intent." *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 594

3  (2011).

4          Plaintiffs argue California Penal Code section 653o runs afoul of the express

5  preemption clause of the ESA in that it effectively "prohibit[s] what is authorized pursuant to an

6  exemption or permit provided for in [the Act] or in any regulation which implements [the Act]."

7  16 U.S.C. § 1535(f).  California defendants argue the court should interpret Penal Code section

8  653o solely to ban intrastate sale of crocodile and alligator, not interstate commerce, thus

9  avoiding a conflict with the regulations entirely.  The California defendants' brief argues entirely

10  from this premise.  This argument is fundamentally flawed, starting with the fact that the law

11  expressly makes it unlawful to "import into this state" the subject species.

12          As a threshold matter, California defendants argue the court should employ the

13  canon of constitutional avoidance to construe the statute to prohibit only intrastate trade.  The

14  canon of constitutional avoidance is a means of resolving an ambiguity in a statute.  *Nielsen v.*

15  *Preap*, 139 S.Ct. 954, 972 (2019).  If one plausible reading of the statute requires resolving a

16  constitutional issue, and another reading does not, the canon counsels to read to avoid the

17  constitutional question.  *Id.*  However, "[t]he canon has no application absent ambiguity."  *Id.*

18  (internal quotation marks and citation omitted).  Reading "unlawful to import into this state" in

19  section 653o to forbid only intrastate commerce stretches the statute past its breaking point.  To

20  apply the canon of constitutional avoidance here would insert an ambiguity where there is none.

21  As the Supreme Court observed in a different context, "[t]o cut the statute off where the

22  Government urges is not to interpret the statute [the California Legislature] enacted, but to

23  fashion a new one." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2302 (2019) (declining to extend canon

24  of constitutional avoidance to point of excising words from Lanham Act).  Legislative enactment

25  is beyond the role of this court; therefore, the court turns to the merits of the preemption

26  argument.

27          In *Man Hing Ivory and Imports, Inc. v. Deukmejian*, the plaintiff, a wholesale

28  importer of elephant ivory, sued to enjoin the enforcement of California Penal Code section 653o

1   and specifically its prohibition on the sale of elephant parts.  702 F.2d 760, 761 (9th Cir. 1983).

2   The plaintiff advanced similar arguments made here, that the law was preempted by CITES, the

3   ESA and the implementing regulations of the ESA.  *Id.*  The federal regulation barred trade in

4   African elephant parts but created a special permit for individuals trading in compliance with

5   CITES.  *Id.* at 764.  In affirming the district court's findings, the Ninth Circuit held that although

6   ESA § 6(f) did not wholly preempt California Penal Code section 653o, preemption applied

7   insofar as it prohibited what was expressly authorized by the federal permit for CITES-compliant

8   individuals.  *Id.* at 765.

9          Moreover, in *Man Hing*, the state argued a condition in the federal permit stating

10  "[t]he validity of this permit is also conditioned upon strict observance of all applicable foreign,

11  state, and other federal law[,]" amounted to a delegation of authority to regulate back to states,

12  negating the preemptive effect of the permit scheme.  *Id.* at 765.  The state contended this, in

13  conjunction with the provision § 6(f) of the ESA allowing for the validity of State law "more

14  restrictive than the exemptions or permits provided for in this chapter or in any regulation which

15  implements this chapter but not less restrictive than the prohibitions so defined," purportedly

16  delegated authority back to states to outright prohibit activities otherwise expressly permitted

17  under the regulations.  *Id.* (citing 16 U.S.C. § 1535(f)).  The Ninth Circuit rejected this argument,

18  holding these provisions simply served to avoid preempting state health, quarantine, agricultural,

19  and customs laws or regulations.  *Id.* (citing 50 C.F.R. § 10.3[3] as the derivation of the permit

20  condition).

21         Similarly, in *H.J. Justin & Sons, Inc. v. Brown*, the plaintiff, a boot manufacturer,

22  sued to enjoin California Penal Code section 653o with regard to African elephant, Indonesian

23  python, and wallaby kangaroo on preemption grounds.  519 F. Supp. 1383 (E.D. Cal. 1981).  The

24  plaintiff had a federal permit to sell African elephant parts in interstate commerce.  *Id.* at 1390.

25  _____

[3] 50 C.F.R. § 10.3 provides: "No statute or regulation of any State shall be construed to relieve a
26  person from the restrictions, conditions, and requirements contained in this subchapter B. In
    addition, nothing in this subchapter B, nor any permit issued under this subchapter B, shall be
27  construed to relieve a person from any other requirements imposed by a statute or regulation of
    any State or of the United States, including any applicable health, quarantine, agricultural, or
28  customs laws or regulations, or other Service enforced statutes or regulations."

10

1    Plaintiff did not possess a permit to sell products made from Indonesian python or wallaby

2    kangaroo because, at the time, no permit was necessary.  *Id.*  Examining the legislative history of

3    ESA § 6(f), the district court found evidence of Congressional intent to preempt only selectively.

4    *Id.* at 1388.  Committee reports not qualified or controverted in the legislative record indicated a

5    preference for concurrent state regulation, subject to a proviso that "[t]he only exception to this

6    would be in cases where there was a specific Federal permission for or a ban on importation,

7    exploitation, or interstate commerce; in any such case the State could not override the Federal

8    action."  *Id.* (quoting House Report on the Endangered Species Act, H.R. Rep. No. 412, 93d

9    Cong., 1st Sess. (1973)).  Regardless, the district court held the permit required to sell African

10   elephant did not preempt California Penal Code section 653o because preemption would result in

11   the anomalous result of granting a lower degree of protection to an animal expressly protected by

12   the Act while allowing a  ban on less-protected animals.  *Id.* at 1391.

13          On appeal, the Ninth Circuit reversed in part.  *H.J. Justin & Sons, Inc. v.*

14   *Deukmejian*, 702 F.2d 758 (9th Cir. 1983).  The Ninth Circuit sustained the district court's

15   holding that preemption did not apply to trade in Indonesian python and wallaby kangaroo;

16   relying on *Man Hing*, however, it reversed the district court and found preemption did apply to

17   African elephants.  *Id.* at 759.  Because federal regulations required a permit to trade in the parts

18   of African elephants, the state statute was in direct conflict with authorization by permit and was

19   thus preempted, notwithstanding the "anomalous result" cited by the district court.  *Id.* at 759–60.

20          The preemptive effect of ESA § 6(f) is clear.  If trade in American alligators,

21   saltwater crocodiles and Nile crocodiles is authorized by a permit or an exemption under the

22   implementing regulations, the state's prohibition in California Penal Code section 653o is

23   preempted.  As discussed above, the cases addressing § 1535 focus on the preemptive effect of a

24   permit requirement, as opposed to an exemption.  The dispositive question here is whether the

25   species at issue are covered by the exemption contemplated by § 1535(f).

26   /////

27   /////

28   /////

11

1    Plaintiffs argue trade in all three species is authorized under an exemption in the

2  form of regulatory "special rules."  Reply to Intervenors at 5 (citing 50 C.F.R. 17.42).[4]  The ESA

3  does grant the Secretary of the Interior authority to permit acts otherwise prohibited under the

4  statute.  16 U.S.C. § 1539(a).[5]  The same statute enumerates several exemptions, including a

5  hardship exemption (16 U.S.C. § 1539(b)), an Alaskan native exemption (16 U.S.C. § 1539(e)),

6  and an exemption for trade in animal parts predating the Act (16 U.S.C. § 1539(f)).  Intervenor

7  defendants argue the use of the term "exemption" in 16 U.S.C. § 1539 makes it a defined term of

8  art; therefore, other situations in which a person is relieved from the permitting requirement are

9  not, in fact, "exemptions."  At hearing, the intervenors clarified their contention that special rules

10  such as 50 C.F.R. § 17.42 identify areas in which FWS is signaling an intent not to regulate,

11  allowing states to set the floor.  But it cannot be the case that the regulations adopted under the

12  authority of 16 U.S.C. § 1539(a) are simply expressions of an intent not to regulate; without them,

13  trade would be prohibited, as the species are ESA-listed.  *See* 50 C.F.R. §§ 17.21, 17.31.

14    The court notes the term "exemption" is not defined in the definitions section of

15  the ESA, 16 U.S.C. § 1532, nor does the statute identifying exemptions define the term

16  differently.  It is perhaps notable that the subheader 16 U.S.C. § 1539(d)[6] refers to "permits and

17  exemptions" in a formulation mirroring that of the preemption clause, although the body of the

18  provision switches to the term "exceptions."  Still, notwithstanding the intervenor defendants'

19  argument, plaintiffs raise a serious question regarding whether the rules on reptiles are the

20  "exemptions" contemplated by § 6(f) of the ESA, and therefore preempt California Penal Code

21  section 653o.

22  /////

23  ───────────────────

[4] The court excerpts relevant regulatory text below, in discussing it more fully.

24  [5] "The Secretary may permit, under such terms and conditions as he shall prescribe – (A) any act

25  otherwise prohibited by section 1538 of this title for scientific purposes or to enhance the
propagation or survival of the affected species[.]"  16 U.S.C. (a)(1)(A).

26  [6] "The Secretary may grant exceptions under subsections (a)(1)(A) and (b) of this section only if
he finds and publishes his finding in the Federal Register that (1) such exceptions were applied

27  for in good faith, (2) if granted and exercised will not operate to the disadvantage of such
endangered species, and (3) will be consistent with the purposes and policy set forth in section

28  1531 of this title."

12

As a threshold matter, all three species are listed as threatened (saltwater and Nile crocodiles of the specified populations) or threatened– similarity of appearance (American alligator).  50 C.F.R. § 17.11.  Threatened and similarity of appearance species listed on or prior to September 26, 2019 are subject to the prohibitions listed in 50 C.F.R. § 17.21 by default.  50 C.F.R. § 17.31.  Taking, possessing, transporting and selling these animals are all prohibited.  50 C.F.R. § 17.21.  However, the Director "may issue a permit for any activity otherwise prohibited with regard to threatened wildlife."  50 C.F.R. § 17.32.  As noted above, the Secretary of the Interior has promulgated "Special Rules" relating to crocodilians. 50 C.F.R. § 17.42.

While not defined in statute or regulation here, an "exemption" is "[t]he action of exempting, or state of being exempted from a liability, obligation, penalty, law or authority; freeing, freedom; an instance of the same, an immunity." *Exemption, n. definition*, OED Online, Oxford University Press, March 2020, oed.com/view/Entry/66070 (accessed 31 March 2020). Because a permit would be required absent some relief from that obligation, the special rules relating to reptiles at 50 C.F.R. § 17.42 appear definitionally to be an exemption.

Here, the language of the "permit or exemption" clause of § 6(f) of the Act should be interpreted applying "the commonsense canon *of noscitur a sociis*—which counsels that a word is given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008) (citation omitted).  The "exemption" mentioned in the preemption clause is disjunctive with a permit—i.e., states may not prohibit "what is authorized pursuant to an exemption **or** permit[.]"  16 U.S.C. § 1535(f) (emphasis added).  Thus, the logical inference is that the obligation to which the exemption applies is an otherwise-applicable permit requirement.

a.   Nile and Saltwater Crocodiles

Nile crocodiles and saltwater crocodiles from Australia are listed as "threatened crocodilians" under 50 C.F.R. § 17.42(c)(1)(i).  The regulation provides individuals may

> import, export, or re-export, or sell or offer for sale, deliver, receive, carry, transport, or ship in interstate or foreign commerce and in the course of a commercial activity, threatened crocodile skins, parts, and products without a threatened species permit otherwise required under § 17.32 provided the

requirements of parts 13, 14, and 23 of this subchapter and the requirements of paragraphs (c)(3) and (4) of this section have been met.

50 C.F.R. § 17.42(c)(3).  Parts 13 and 14 are the general permit procedures and import, export and transportation regulations.  50 C.F.R. §§ 13.1–13.5, 14.1–14.4.  Part 23 of the subchapter is regulations implementing the tagging and tracking system of CITES.  50 C.F.R. § 23.1. Thus, the sale and delivery of Nile and saltwater crocodile skins in interstate commerce is expressly allowed under the regulations without a permit, provided the seller complies with CITES.

Because trade in Nile and saltwater crocodile is prohibited, and prohibited trade is by default authorized only by compliance with CITES, it appears that the strictures of CITES are intended to supplant the Department's issuance of its own permit.  Because one who adheres to CITES is exempted from a permit requirement by the special rules on reptiles, this provision appears to be the exemption contemplated under the preemption clause.

### b.  American Alligators

Regarding the American alligator, the "Special Rule" states:

> Any person may take an American alligator in the wild, or one which was born in captivity or lawfully placed in captivity, and may deliver, receive, carry, transport, ship, sell, offer to sell, purchase, or offer to purchase such alligator in interstate or foreign commerce, by any means whatsoever and in the course of a commercial activity in accordance with the laws and regulations of the State of taking subject to the following conditions:
>
> (A) Any skin of an American alligator may be sold or otherwise transferred only if the State or Tribe of taking requires skins to be tagged by State or tribal officials or under State or tribal supervision with a Service-approved tag in accordance with the requirements in part 23 of this subchapter; and
>
> (B) Any American alligator specimen may be sold or otherwise transferred only in accordance with the laws and regulations of the State or Tribe in which the taking occurs and the State or Tribe in which the sale or transfer occurs.

50 C.F.R. § 17.42(a)(2)(ii).  As a similarity-of-appearance species, the American alligator would, by default, be subject to a permit requirement.  Therefore, a state of exception is logically an "exemption."  The same logic that applies to Nile and saltwater crocodiles thus appears to apply here, with one exception.

14

1          It may be that the provision requiring sale or transfer of American alligator "only

2    in accordance with the laws and regulations of the State or Tribe . . . in which the sale or transfer

3    occurs," 50 C.F.R. § 17.42(a)(2)(ii)(B), is an express delegation of the authority to regulate back

4    to the states.  However, while plaintiffs argue a similar clause was addressed in the *Man Hing*

5    case discussed above, 702 F.2d at 765, the court is not convinced this case is directly analogous.

6    In *Man Hing*, the permits issued for trade in African elephant stated on their face, "THE

7    VALIDITY OF THIS PERMIT IS ALSO CONDITIONED UPON STRICT OBSERVANCE OF

8    ALL APPLICABLE FOREIGN, STATE, AND OTHER FEDERAL LAW."  *Id.*  The court

9    rejected the argument that this notice on the face of the permit was a delegation of authority back

10   to the states, finding rather that it was simply a notice of the applicability of 50 C.F.R. § 10.3.  *Id.*

11   That regulation made clear a permit did not relieve the permitholder of the obligation to comply

12   with health, quarantine, agricultural, or customs laws or regulations.  *Id.*

13          Here, the section on American alligator appears specifically to make the ability to

14   sell or transfer conditional on compliance with state law.  Plaintiffs' argument is that the

15   regulatory history of the special rules is consistent with the court's analysis in *Man Hing*, in that

16   such a clause is intended to allow states to regulate products implicating health or quarantine

17   concerns, such as meat for human consumption.  Reply to Intervenors at 4 n.5.  The effect of this

18   provision has not been adequately briefed by the parties, however, and the court need not decide

19   the issue now.  At this stage, plaintiffs have shown a likelihood of success on their position as to

20   the Nile and saltwater crocodiles and raised at least serious questions as to the American alligator.

21                          2.   Likelihood of Irreparable Injury

22          "[P]laintiffs must establish that irreparable harm is *likely*, not just possible, in

23   order to obtain a preliminary injunction."  *Cottrell*, 632 F.3d at 1131 (citing *Winter*, 129 S.Ct. at

24   375–76) (emphasis in original).  The analysis focuses on the irreparability of the injury rather

25   than its magnitude.  *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (citing *Simula, Inc. v.

26   Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999)).  A merely speculative injury is insufficient to

27   constitute irreparable injury.  *Caribbean Marine Servs. Co. v. Balridge*, 844 F.2d 668, 674 (9th

28   Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish

1    standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to

2    preliminary injunctive relief.")  (emphasis in original, citation omitted).

3           Here, plaintiffs' declarations describe several likely harms.  The California

4    defendants object to the admissibility of these declarations arguing they are speculative and based

5    on the "incorrect assumption that Penal Code § 653o bans interstate sales."  *See* ECF No. 37–3.

6    To the extent the objection relies on the flawed "intrastate only" argument, it is overruled.

7    Several of the declarations do make unqualified predictions about the actions of third parties not

8    directly subject to liability under the law.  *See, e.g.,* Ronald Wall Decl. ¶ 2, ECF No. 14–5

9    (describing without personal knowledge "extremely disruptive and detrimental effects on

10   California's destination tourism industry").  "It is necessary that a lay witness's opinions are

11   based upon . . . direct perception of the event, are not speculative, and are helpful to the

12   determination of factual issues before the jury."  *United States v. Freeman*, 498 F.3d 893, 905

13   (9th Cir. 2007) (internal quotation marks, citation omitted).  These assumptions about the course

14   others could take in response to the law are thus speculative.

15          However, the balance of the declarations set forth, in far greater proportion,

16   current or imminent harms in the personal knowledge of the declarants.  Harms to their

17   businesses include the direct loss of sales of the products at issue and the loss of business

18   relationships and goodwill.  *See* Ronald Wall Decl. ¶ 4 (describing need to ration alligator meat in

19   breach of existing contracts due to potential meat shortage); Stephanie Jarin Decl. ¶¶ 1–2,

20   ECF No. 14-6 (describing likelihood of complete liquidation of Beverly Hills, California-based

21   alligator and crocodile business); Nathan Wall Decl. ¶ 6, ECF No. 14-3 (describing collapse of

22   joint venture agreement in alligator farm valued at approximately $2,000,000).  Several plaintiffs

23   speak of the loss of specialized jobs without transferrable skills.  *See* Beatrice Amblard Decl. ¶ 8,

24   ECF No. 14-1 (describing specialized training to work with crocodile and alligator skins); Van

25   Salcedo Decl. ¶ 8, ECF No. 14-4 (describing need to move from California to continue using

26   specialized trade skills); Stephen Sagrera Decl. ¶ 8, ECF No. 14-8 (describing significant role of

27   alligator industry in rural Louisiana labor market); Christine Redd Decl. ¶ 3, ECF No. 14-12

28   (describing non-transferability of tannery operations to other types of leather).  Others describe

1   impacts to the system of alligator conservation sustained by revenue from the sale of the animals.

2   *See* Dr. Dilys Roe Decl. ¶ 2–3. ECF No. 14-13.  These alleged harms are far from attenuated.

3   They describe injuries likely to be sustained as a direct result of the ban should it be allowed to

4   take effect.  The speculative nature of selected statements in the declarations does not taint the

5   rest, which describes a serious likelihood of injury.

6        The injuries alleged here are largely economic.  Economic injury, standing alone,

7   is not generally considered irreparable, as it can be remedied by the award of damages.  *East Bay*

8   *Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1280 (9th Cir. 2020) (citation omitted).  However,

9   where the parties cannot recover monetary damages from their injury, economic harm can be

10  considered irreparable.  *Id.*  Where California's Eleventh Amendment sovereign immunity bars a

11  financial recovery, monetary injury may be irreparable.  *A Woman's Friend Pregnancy Resource*

12  *Clinic v. Harris*, 153 F. Supp. 3d 1168, 1215 (E.D. Cal. 2015).  In addition, the economic harm

13  alleged is not confined to a single plaintiff; the harms alleged are likely to be diffuse, industry-

14  wide and difficult to quantify as damages.  It appears there would be no way to remedy after the

15  fact the harms plaintiff would suffered without an injunction.

16       Thus, plaintiffs have shown they are likely to suffer an irreparable injury.

17       3.   Balance of Hardships

18       In balancing the equities, the court "must balance the competing claims of injury

19  and must consider the effect on each party of the granting or withholding of the requested relief."

20  *Winter*, 555 U.S. at 24 (citation omitted).  Here, plaintiffs seek an injunction for its proper

21  purpose, to preserve the *status quo ante*.  They have been able to trade in alligator and crocodile

22  goods in California under the federal regulations in place prior to the effective date of section

23  653o, and their businesses rely in large part on the ability to continue.  As discussed above,

24  plaintiffs would suffer significant immediate harm to their businesses should the law go into

25  effect.

26       If the court issues the injunction, the State of California would be barred from

27  enforcing its law.  While a state suffers an "'irreparable injury whenever an enactment of its

28  people or their representatives is enjoined,'" this "abstract form of harm . . . is not dispositive of

17

the balance of harms analysis." *Independent Living Center of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 658 (9th Cir. 2009), *vacated and remanded on other grounds by Douglas v. Independent Living Center of S. Cal., Inc.*, 565 U.S. 606 (2012)).  "If it were, then the rule requiring balance of competing claims of injury would be eviscerated." *Id.* (internal quotation marks and citation omitted).  Aside from California's interest in protecting the validity of its legislation and the intervenor defendants' interest in advancing their interests in environmental preemption law nationally, there are no new harms the defendants advance to weigh against the plaintiffs' showing.

Because defendants' alleged harms consist primarily of damage to their prospective ability to advance their policy goals, rather than harm to the *status quo ante*, and because plaintiffs have demonstrated a likelihood of serious and far-reaching harm to their businesses and the managed conservation scheme they describe, the balance of hardships tips sharply in favor of the plaintiffs.

### 4. Public Interest

The Ninth Circuit recognizes "the public interest favors applying federal law correctly."  *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011). Large swaths of the parties' briefing address whether enforcement of California Penal Code section 653o would adequately serve the public interest in the protection of animals.  Plaintiffs and the United States, as an amicus curiam, describe the federal system as a success story for the crocodilians at issue.  Both plaintiffs and the United States claim the federal species management system in which trade is allowed under the conditions of CITES brought the American alligator, in particular, back from the brink of extinction.  Defendants on the other hand argue California's ban on trade in these species would be more effective in protecting the welfare of these animals.

For a district court to answer the question of which system would better serve the public interest risks crossing the line from law into policy.  Here, setting aside the policy judgments this dispute encompasses, the court concludes plaintiffs' likelihood of success as to preemption compels finding in favor of plaintiffs.  The question is not which policy better protects animals, but whether state or federal law controls.  Although California has its own

1    interest in protecting animals, the reach of that interest ends where the preemptive effect of

2    federal law begins.  Because plaintiffs make a strong showing of preemption, the court finds the

3    public interest weighs in their favor.

4            C.   Consolidation

5            No party objects to consolidating this case with *Delacroix Corp. et al. v. Becerra*,

6    No. 2:19-cv-02488-KJM-CKD.  Plaintiffs in the *April in Paris* action did, however, request to

7    continue filing briefs separately from the plaintiffs in the *Delacroix* action in the future should the

8    cases be consolidated.  Response, ECF No. 44.

9            The court has the power to consolidate actions involving "common question[s] of

10   law or fact."  Fed. R. Civ. P. 42(a).  The purpose of consolidation is to avoid unnecessary cost and

11   delay.  *E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998).  "To determine whether to

12   consolidate, a court weighs the interest of judicial convenience against the potential for delay,

13   confusion, and prejudice caused by consolidation."  *Sw. Marine, Inc. v. Triple A Mach. Shop,*

14   *Inc.*, 720 F. Supp. 805, 807 (N.D. Cal. 1989).  Both actions turn on substantially identical

15   questions of law, whether California Penal Code § 653o is preempted by federal law with regard

16   to American alligators, saltwater crocodiles and Nile crocodiles and whether California Penal

17   Code § 653o violates the dormant Commerce Clause.  The plaintiffs in both actions seek the same

18   relief, a declaration that § 653o is invalid with regard to those species, and an injunction against

19   its enforcement.  The United States of America filed an identical amicus brief in both cases, and

20   the court granted the Humane Society of the United States, Humane Society International and the

21   Center for Biological Diversity defendant-intervenor status.  For these reasons, and because both

22   cases have moved forward on parallel tracks, the court finds the interests of judicial convenience

23   outweigh the potential for delay, confusion and any prejudice caused by consolidation.  The court

24   ORDERS the consolidation of the above-captioned cases under Federal Rule of Civil procedure

25   42.

26   IV.    CONCLUSION

27           For all the foregoing reasons, the court GRANTS plaintiffs' motion for a

28   preliminary injunction in the *April in Paris* action.  Because plaintiffs in the *Delacroix* action

1  requested identical relief on substantially identical legal theories, their motion is DENIED as

2  moot by the grant of identical relief in the *April in Paris* action.  This order resolves ECF No.13

3  in Case No. 2:19-cv-02471-KJM-CKD and ECF No. 2 in Case No. 2:19-cv-02488-KJM-CKD.

4      It is hereby ORDERED that defendants, their employees, agents, and successors in

5  office are ENJOINED from enforcing California Penal Code Section 653o and 653r in connection

6  with the importation, possession, or sale of American alligator bodies, parts, or products thereof,

7  and of the bodies, parts, or products of CITES Appendix II-listed saltwater and Nile crocodiles,

8  until the final disposition of this case.  Plaintiffs will not be required to post a bond, and the state

9  has not requested one.

10      Moreover, this matter is consolidated with *Delacroix Corp. et al. v. Becerra*, No.

11  2:19-cv-02488-KJM-CKD.  The Clerk of Court is directed to consolidate these two matters

12  accordingly.  The caption for the consolidated case shall from now on be that for the case of *April*

13  *in Paris, et al. v. Becerra et al.,* captioned above, which is designated as the primary case.

14      The parties shall file a joint status report addressing the topics outlined in Eastern

15  District Local Rule 240 no later than fourteen days from the date of this order.  The court sets an

16  initial scheduling conference for **Thursday, November 19,** at **2:30 p.m.**

17      IT IS SO ORDERED.

18  DATED:  October 13, 2020.

19  _____

20  CHIEF UNITED STATES DISTRICT JUDGE